CLERK'S OFFICE U.S DIST COURT
AT DANVILLE, VA
FILED
for Roanoke
JAN - 4 2010
JOHN F. CORCORAN, CLERK
BY: /s/ M. Hupp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GEORGE FREDERICK DELANEY, <br> Plaintiff, | Civil Action No. 7:08-cv-00465 |
| v. | **MEMORANDUM OPINION** |
| ROBERT MARSH, M.D., et al., <br> Defendants. | By: Hon. Jackson L. Kiser <br> Senior United States District Judge |

Plaintiff George Frederick Delaney, a Virginia inmate proceeding pro se, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names as defendants Daniel Braxton, Warden of the Augusta Correctional Center ("Prison"), and Fred Shilling, Director of Health Services ("Correctional defendants"); Carolyn Maclam, the Prison's head nurse; and Dr. Robert Marsh, the Prison's doctor. Plaintiff alleges that the defendants denied him necessary medical treatment, in violation of the Eighth Amendment of the United States Constitution. This matter is before me upon the Correctional defendants' and Maclam's motions for summary judgment. After reviewing the record, I grant these defendants' motions for summary judgment.

I.

A.

Plaintiff alleges that defendant Dr. Marsh failed to order his medically necessary diet recommended by the Medical College of Virginia ("Hospital") and approved by the Virginia Department of Corrections' ("VDOC") Chief Physician while he was incarcerated at the Prison. The Correctional defendants and defendant Maclam also allegedly interfered with plaintiff's access to his medically necessary diet and caused him additional, avoidable pain and suffering.

Plaintiff received medical attention at the Hospital in 2003 and subsequently was

recommended a medically necessary diet ("original diet"). The VDOC's chief physician approved the original diet, and plaintiff alleges that the original diet is permanently necessary because of his poor digestive health caused by ulcerative colitis. The buildup of excessive scar tissue from his many surgeries restricted his small bowel. (Am. Compl 6.) The special diet was designed to alleviate complications and discomfort from foods that cause small bowel obstructions. (Id.)

In December 2007, Dr. Marsh met the plaintiff concerning his dietary needs. (Id.) Plaintiff provided Dr. Marsh with a detailed history of his medical condition and dietary needs. Despite plaintiff's information about the medically necessary diet, Dr. Marsh took no act to carry out the original diet detailed in plaintiff's medical file.

A week later, plaintiff experienced complications leading to bowel obstructions. Plaintiff verbally complained to the medical department seven times, and staff moved plaintiff from his cell to the infirmary on December 20, 2007. Dr. Marsh examined plaintiff and ordered him taken to a local medical center for abdominal X-rays, which revealed a small bowel obstruction. (Id.) Plaintiff was transferred from the local medical center to the Hospital for treatment.

After plaintiff's release from the Hospital on January 2, 2008, Dr. Marsh refused to order plaintiff's medically necessary diet and ordered Nurse Maclam to modify plaintiff's diet by permitting him be served processed foods. (Id. 7.) Plaintiff alleges that Maclam knew it was against VDOC policy and procedure to alter a medically necessary diet. (Id. 7-8.) As a result to the change in the diet, plaintiff re-experienced the same complications related to his December 2007 hospital stay. Plaintiff filed grievances to Nurse Maclam and Dr. Marsh, but they did not correct his diet. Nurse Maclam showed plaintiff a faxed request to the VDOC's head dietician

requesting a diet designed for plaintiff's condition, although plaintiff already received a recommended diet in 2003.

Plaintiff filed grievances to Dr. Marsh and Braxton to complain about his condition and the diet. Braxton replied that he would ask Dr. Marsh to evaluate plaintiff. (Am. Compl. 8.) Dr. Marsh met with plaintiff but ignored plaintiff's requests to have his original diet that excluded processed foods. (Id. 9.) Braxton determined plaintiff's subsequent grievance unfounded, and defendant Shilling did not respond to plaintiff's subsequent appeal. Plaintiff voluntarily discontinued the modified diet to avoid further complications and purchased food from the facility commissary.

Plaintiff filed an action in the Augusta General District Court seeking an injunction to compel Dr. Marsh to order the original diet that excluded processed food. Dr. Marsh received notice of the action and called plaintiff to his office. (Id. 10.) Dr. Marsh subsequently modified plaintiff's diet back to the original 2003 diet that excluded processed foods from his diet.

B.

The Correctional defendants, Warden Braxton and Director Schilling, aver that they are not medical doctors, rely on the professional opinions of doctors and nurses about a prisoner's medical care, and do not make medical decisions or intervene in the treatment decisions made by medical professionals. (Braxton Aff. ¶¶ 3, 5-6; Schilling Aff. ¶ 5.) Schilling investigated plaintiff's grievance and discovered that plaintiff was receiving his original diet. (Schilling Aff. ¶¶ 9-10.) Maclam avers that she has no authority to determine whether the plaintiff is granted or denied a special or restricted diet and she only acted upon the plaintiff's diet upon the express direction of a medical doctor. (Maclam Aff. ¶¶ 1-2.) Maclam is not responsible for providing

3

meals to inmates. (Id. ¶ 3.)

In response, plaintiff submitted a brief in opposition to these defendants' motions for summary judgment, signed under penalty of perjury. Plaintiff avers that he needs the diet for small bowel disease, not chronic ulcerated colitis. (Pl.'s Br. Opp. Def.'s Mot. Summ. J. (docket #68) 2.) Plaintiff avers that his filings "produce ample evidence showing that the defendants' inaction, actions deprived [plaintiff] of treatment for [the] disease."[1] (Id.)

II.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R.

---

[1] Plaintiff argues that he submitted a verified complaint, sworn under penalty of perjury. However, neither plaintiff's complaint nor, more importantly, his amended complaint are notarized or signed pursuant to 28 U.S.C. § 1746. Therefore, I only consider his averments of facts based on personal knowledge contained in his opposing brief to counter these defendants' motions for summary judgment.

[2] The parties received reasonable and explicit notice of the possibility that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk timely issued a Roseboro notice. See Fed. R. Civ. P. 12(d).

4

Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need in order to state a claim under the Eighth Amendment for ineffective medical assistance. Estelle v. Gamble, 429 U.S. 97, 104 (1976). In order to show deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

5

However, the prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. Non-medical prison employees can be found to have acted with deliberate indifference if they intentionally delay or deny an inmate access to medical care or intentionally interfere with his prescribed treatment. Estelle, 429 U.S. 104-05. However, claims of medical malpractice and negligent diagnosis are not cognizable in a § 1983 proceeding. Id. See Sosebee, 797 F.2d at 179; Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence, but not a claim under the Eighth Amendment). A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee, 797 F.2d at 181-83.

Plaintiff fails to establish that Nurse Maclam acted grossly incompetently, inadequately, or excessively "as to shock the conscience or to be intolerable to fundamental fairness." Maclam avers that she has no authority to determine whether the plaintiff is granted or denied a special or restricted diet, she only acted by the express direction of the doctor, and she is not responsible for providing meals to inmates. Plaintiff does not counter this averment and recognizes in his complaint that Nurse Maclam followed the doctor's order modifying his medical diet. Therefore, plaintiff fails to establish Maclam's deliberate indifference, and I terminate her as a defendant.

Because the Correctional defendants are not medical personnel, plaintiff must show that Schilling and Braxton were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were deliberately indifferent to the prison physician's misconduct where even a lay person would understand that the medical care provider is being deliberately indifferent. Miltier, 896 F.2d at 854. Supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel, id., and Schilling and Braxton both aver that they rely on and do not substitute their judgments for VDOC's medical professionals. However, plaintiff fails to establish a connection between the medical staff's alleged constitutional violations and any interference or deliberate indifference by the Correctional defendants. Plaintiff tries to hold the Correctional defendants liable for simply being higher in the VDOC hierarchy, but § 1983 liability is not established merely by showing that a subordinate was deliberately indifferent to a plaintiff's needs. Id. Therefore, plaintiff fails to state a claim against the Correctional defendants, and I terminate them as defendants.

III.

For the foregoing reasons, I grant Maclam's and Schilling and Braxton's motions for summary judgment and terminate them as parties to this action.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and counsel of record for the defendants.

ENTER: This 4th day of January, 2010.

Senior United States District Judge