CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for RKe

MAR 25 2010

JOHN F. CORCORAN, CLERK
BY: H McDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GEORGE FREDERICK DELANEY, )<br>Plaintiff, )<br> )<br>v. )<br> )<br>JOHN MARSH, M.D., )<br>Defendant. ) | | Civil Action No. 7:08-cv-00465<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. Jackson L. Kiser<br>Senior United States District Judge |

Plaintiff George Frederick Delaney, a Virginia inmate proceeding pro se and in forma pauperis, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff named as defendants Daniel Braxton, Warden, and Fred Shilling, Director of Health Services ("Correctional defendants"); Carolyn Maclam, head nurse; and Dr. Robert Marsh.[1] Plaintiff alleges that the defendants denied him necessary medical treatment, in violation of the Eighth Amendment of the United States Constitution. I previously granted the Correctional defendants' and Maclam's motions for summary judgment and terminated them as defendants. This matter is presently before me upon Dr. Marsh's motion to dismiss or for summary judgment. After reviewing the record, I deny Dr. Marsh's motion.

I.

Plaintiff alleges that defendant Dr. Marsh failed to order his medically necessary diet recommended by the Medical College of Virginia ("Hospital") and approved by the Virginia Department of Corrections' ("VDOC") Chief Physician while plaintiff was incarcerated at the Augusta Correctional Center ("Jail"). Plaintiff received medical treatment from the Hospital in 2003 for bowel obstructions, and the Hospital recommended that the plaintiff have a medically

---

[1] Plaintiff subsequently amended his complaint to correct the defendant doctor's name from Robert Marsh, M.D. to John Marsh, M.D.

necessary diet ("2003 diet") to avoid bowel obstructions. The VDOC's Chief Physician approved the 2003 diet, and plaintiff alleges that the original diet is permanently necessary to treat his ulcerative colitis.[2]

Dr. Marsh met with plaintiff to discuss his dietary needs the day after plaintiff arrived at the Jail on December 5, 2007. (Am. Compl (no. 36) 5.) Plaintiff provided Dr. Marsh with a detailed history of his medical condition[3] and dietary needs and told Dr. Marsh that excessive scar tissue from his many surgeries restricted his small bowel. (Id.) Plaintiff explained that the 2003 diet, recommended by the Hospital and approved by the VDOC's Chief Physician, alleviated discomfort and prevented complications from foods that cause bowel obstructions. (Id.) Despite plaintiff's information about the medically necessary diet, Dr. Marsh refused to re-authorize plaintiff's medically necessary diet recommended by the Hospital and approved by the VDOC's Chief Physician.

A week later, plaintiff experienced complications for sixteen days, including rectum swelling and bleeding, vomiting, abdominal swelling, and constipation, that led to a bowel obstruction. (Id. at 5, 16.) Plaintiff verbally complained to the medical department seven times, and staff moved plaintiff from his cell to the infirmary on December 20, 2007. Dr. Marsh examined plaintiff and ordered plaintiff taken to a local medical center for abdominal X-rays, which confirmed a small bowel obstruction. (Id. at 6.) Plaintiff was transferred from the local

---

[2] In his response to defendant Maclam's motion to dismiss, plaintiff scratched out ulcerative colitis and hand-wrote small bowel disease. (Resp. (no. 68) 2.)

[3] Plaintiff told Dr. Marsh about his "extensive surgeries, Illestomy surgery, Ileo-anal pull through complextion protectomy, take down Illeostomy and Ileo-anal anostomosis and total colectomy, [plus] prolapse repair excessive scar tissue has caused 2 strictured areas in his small bowel. [sic]" (Am. Compl. 6.)

2

medical center to the Hospital for treatment.[4]

After plaintiff's release from the Hospital on January 2, 2008, Dr. Marsh still refused to re-authorize plaintiff's 2003 diet. However, Dr. Marsh modified the 2003 diet to allow plaintiff to be served processed foods, despite plaintiff's objections. (Am. Compl. 6.) As a result of including processed foods in his diet, plaintiff experienced the same complications he felt before his December 2007 bowel obstruction. Plaintiff filed grievances to Nurse Maclam and Dr. Marsh, but Dr. Marsh did not re-authorize plaintiff's 2003 diet.

Plaintiff wrote a letter to defendants Dr. Marsh and Braxton to complain about his condition and the diet. Braxton replied that he would ask Dr. Marsh to evaluate plaintiff. (Am. Compl. 8.) Dr. Marsh met with plaintiff but ignored plaintiff's requests to authorize his 2003 diet that also excluded processed foods. (Am. Compl. 9.) Plaintiff began feeling the same complications he had before his December hospitalization and stopped eating food from the Jail's food service. Instead, plaintiff bought foods from the commissary to meet his dietary needs and to avoid another bowel obstruction. (Am. Compl. 9.)

In March 2008, plaintiff filed an action in the Augusta County General District Court for an injunction to compel Dr. Marsh to re-authorize the original 2003 diet that excluded processed food. Dr. Marsh received notice of the action and called plaintiff to his office. (Am. Compl. 10.) Dr. Marsh subsequently re-authorized the original 2003 diet that excluded processed foods.

II.

A.

Dr. Marsh requests me to dismiss plaintiff's amended complaint for insufficient process

---

[4]Plaintiff does not describe in his amended complaint the treatment received at the Hospital.

pursuant to Federal Rule of Civil Procedure 12(b)(4). An agent for the United States Marshal Service personally served Dr. Marsh with the summons and complaint that named Robert Marsh, M.D. as the defendant, but Dr. Marsh alleges his first name is John.

Where service of process has given the defendant actual notice of the litigation, "the rules, in general, are entitled to a liberal construction. When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate service of process." Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984). See Tremps v Ascot Oils, Inc. 561 F.2d 41 (7th Cir. 1977) (citing United States v. A. H. Fischer Lumber Co., 162 F.2d 872 (4th Cir. 1947)) (incorrect name is an insufficient reason for defendant to avoid personal jurisdiction when clearly identified in the complaint and already served).[5] However, I may not ignore the plain requirements for process contained in the Federal Rules. See id.

In this case, Dr. Marsh received a copy of the relevant documents upon personal service at the Jail. Dr. Marsh does not argue how continuing this action despite the error of naming him Robert instead of John is prejudicial. Upon receiving Dr. Marsh's Rule 12(b)(4) motion to dismiss, plaintiff promptly filed a motion to amend the amended complaint to correct the

---

[5]Under Virginia law, the person to whom the process is directed must be identified with reasonable certainty, but absolute accuracy is not required. Robertson v. Stone, 199 Va. 41, 44-45, 97 S.E.2d 739, 742 (1957) (explaining that the purpose of service of process is "to apprise the defendant of the nature and object of the proceeding against him and to notify him that his rights may be affected in the litigation"). Furthermore, Va. Code § 8.01-6 permits a correction of a misnomer in a pleading if a court finds "that the party received such notice of the institution of the action that he will not be prejudiced in maintaining a defense on the merits and he knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." Va. Code § 8.01-6. Virginia courts have approved corrections of a misnomer where (1) the right person was incorrectly named, (2) the amendment caused no change in the cause of action, (3) the substituted party bore a real relation of interest to the original party, and (4) no one was prejudiced by the mistake. See Clark v. Nuss, 57 Va. Cir. 401, 402 (Norfolk City 2002) (allowing correction of defendant's name in pleadings from "Ronald Nuss" to "Donald Nuss"); David v. David, 20 Va. Cir. 139, 140-41 (Chesterfield Co. 1990) ("Where the proper person is before the court, a mistake in the person's middle name should not render the order unenforceable.").

4

references of Robert Marsh to John Marsh, and Dr. Marsh did not file any brief in opposition. Therefore, I have jurisdiction over Dr. Marsh because Dr. Marsh received actual notice of the suit, is not prejudiced by its continuation, and plaintiff intended the "Dr. Marsh" who treated him at the Jail to be the defendant. Accordingly, I deny Dr. Marsh's motion to dismiss for insufficient process.

B.

Dr. Marsh also filed a motion to dismiss, pursuant to Rule 12(b)(6), arguing that plaintiff failed to state a claim upon which relief may be granted. A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need in order to state a claim under the Eighth Amendment for cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee v. Murphy, 797 F.2d 179, 181-83 (4th Cir. 1986). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (citing Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985)). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. Id. at 851-52. However, the prisoner must demonstrate that a medical defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citing Rogers v. Evans, 792 F.2d 1052, 1058 (7th Cir. 1986) (collecting cases)).

Notably, claims of medical malpractice and negligent diagnosis are not cognizable in a

§ 1983 proceeding. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Sosebee, 797 F.2d at 179. See also Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence, but not an Eighth Amendment claim). Therefore, a prisoner's disagreement with medical personnel over the course of his treatment does not state a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam).

Viewing the facts and inferences in a light more favorable to the plaintiff, plaintiff alleges that, upon his arrival at the Jail in December 2007, plaintiff completely disclosed to Dr. Marsh his medical history and his medical need for the 2003 diet. (Am. Compl. 6.) Plaintiff also told Dr. Marsh that he would experience a bowel obstruction without the 2003 diet. (Id.) Despite being told this information, Dr. Marsh did not order any medical assistance. (Id.) Immediately after this meeting, plaintiff filed an emergency grievance alleging that he would experience a bowel obstruction if Dr. Marsh did not order the 2003 diet, but Dr. Marsh still did not re-authorize the 2003 diet or order any other medical treatment. Plaintiff experienced internal complications for two weeks that led to a bowel obstruction. (Id.) Plaintiff received emergency treatment, and the Hospital again recommended the 2003 diet. (Id. at 7.)

Despite plaintiff telling Dr. Marsh about his medical history and his complications, plaintiff predicting and experiencing the December bowel obstruction, and the Hospital again recommending the 2003 diet, Dr. Marsh still did not fully re-authorize the 2003 diet. Instead, Dr. Marsh authorized a new diet that permitted processed foods but otherwise was the same as the 2003 diet. Plaintiff began to experience "the exact same complications" as before the December 2007 bowel

obstruction that required hospitalization. (Id. at 8.) Plaintiff filed grievances until Dr. Marsh was ordered to re-evaluate plaintiff, but Dr. Marsh still refused to reinstate the 2003 diet that prohibited processed foods. (Am. Compl. 8.) Once plaintiff filed suit in state court, Dr. Marsh fully re-authorized plaintiff's 2003 diet. (Id. at 9-10.)

Taking the perspective required by Rule 12(b)(6), I find that plaintiff states a claim of deliberate indifference to a serious medical need between when plaintiff arrived at the Jail and the April 2008 re-authorization of the 2003 diet. Plaintiff alleges that he fully disclosed to the doctor the details of his damaged intestines, his past surgeries, his complications, and the potential harm he would experience without the treatment already recommended by the Hospital and approved by the VDOC Chief Physician. Dr. Marsh did not need to draw an inference between plaintiff's history and a particular diagnosis because plaintiff detailed his relevant medical history, prior diagnoses, and the previously recommended and approved treatment plan. Despite fully knowing this information, plaintiff alleges that Dr. Marsh recklessly disregarded his medical needs and the prior recommendations, did not provide plaintiff with any medical assistance, and did not re-authorize the approved treatment plan on three occasions. As a result of this alleged inadequate response, plaintiff experienced severe pain and required emergency surgery.[6]

## C.

---

[6] Although plaintiff sought a negligence claim under state law for the doctor's alleged medical malpractice in his original complaint, he abandoned the claim in his amended complaint. Even if I liberally construed the complaint to state that claim, he failed to state a claim upon which relief may be granted. In Virginia, a party alleging medical malpractice must also obtain an expert certification of merit before serving the defendant. Va. Code § 8.01-20.1. An exception to the certification requirement exists when expert certification is unnecessary "if the plaintiff, in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the [factfinder's] common knowledge and experience." Id. Plaintiff never provided evidence that he obtained an expert's certification of merit before serving the defendant, and his claims concern conditions that a fact finder is wholly unlikely to have common knowledge and experience to help it make a decision without expert testimony.

7

Dr. Marsh requests summary judgment, arguing the instant action is allegedly barred by res judicata.[7] A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[8] Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky.

---

[7] Dr. Marsh attached exhibits of state court records with his motion to dismiss.

[8] The parties received reasonable and explicit notice of the possibility that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk timely issued a Roseboro notice. See Fed. R. Civ. P. 12(d) (discussing conversion of a motion to dismiss).

Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee, 797 F.2d at 182. Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Res judicata requires a final judgment on the merits in an earlier suit, an identity of the cause of action in both the earlier and the later suit, and an identity of parties or their privies in the two suits. Nash County Bd. of Education v. Biltmore Co., 640 F.2d 484, 486 (4th Cir. 1981). Whether claims are identical depends on whether the new claim arises out of same "transaction" or series of transactions as the claim resolved by the prior judgment. Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir. 1986). The term "transaction" for res judicata "connotes a natural grouping or common nucleus of operative facts. Among the factors to be considered in deciding whether the facts of the current and prior claims are so woven together that they constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." Pittston Co. v. United States, 199 F.3d 694, 704 (4th Cir. 1999). See Bouchat v. Bon-ton Dep't Stores Inc., 560 F.3d 315 (4th Cir. 2007) (copyright owner's claims in two infringement suits were identical for res judicata even though actual damages were sought only in second suit).

In March 2008, plaintiff filed in the Augusta County General District Court a "Petition:

And Affidavit for Good Cause for Injunction of Mandamus" with supporting affidavits.[9] (Def.'s Br. Supp. Mot. Summ. J. (no. 77) Ex. 1, 2.) Plaintiff requested that the general district court order Dr. Marsh to authorize the 2003 diet and to award plaintiff compensatory damages for his commissary purchases.

Plaintiff's affidavit filed with the state petition recites the same factual allegations found in the instant amended complaint about the medical treatment he received between his arrival at the Jail in 2007 and the time he left the Hospital in January 8, 2008. On May 1, 2008, plaintiff filed a motion to withdraw the state action because Dr. Marsh, after knowing of the suit, met with the plaintiff and re-authorized plaintiff's 2003 diet. Plaintiff concluded that Dr. Marsh "met his obligation to plaintiff as plaintiff's medical provider." The exhibits do not indicate that plaintiff requested the action to be voluntarily dismissed without prejudice or whether the general district court granted plaintiff's motion with or without prejudice.

Dr. Marsh concludes that the general district court's grant of plaintiff's motion to withdraw constitutes an adjudication on the merits via a consent decree. A consent decree contains some elements of a judgment rendered after trial but in other respects resembles a contractual agreement. McLane v. Vereen, 278 Va. 65, 71, 677 S.E.2d 294, 297 (2009) (citing Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 519 (1986); United States v. ITT Continental Baking Co., 420 U.S. 223, 235-38 (1975); Fuller v. Troy, 169 Va. 490, 494, 194 S.E. 668, 669 (1938); Culpeper Nat'l Bank v. Morris, 168 Va. 379, 385, 191 S.E. 764, 767 (1937)). A consent decree requires "the substantive terms of the parties' agreement concerning the matter in controversy[] and . . . the judge's endorsement of the order or decree

---

[9]Petitioner subsequently amended the petition in April 2008.

rendering its terms enforceable by the court." Id. However, Dr. Marsh does not allege that he ever acknowledged the suit, appeared in the state court action, nor agreed to any disposition of the state court proceeding. Therefore, I am not persuaded that Dr. Marsh entered into a consent decree to adjudicate the merits of the state court action.

Furthermore, Virginia Code § 8.01-380 allows a plaintiff to nonsuit an entire "cause of action," defined as all the operative facts which may give rise to a right of action, before "the action"[10] has been submitted to the court for decision. See Roller v. Basic Construction Co., 238 Va. 321, 327-28, 384 S.E.2d 323, 326 (1989). Therefore, a Virginia plaintiff may nonsuit either a cause of action, a claim, or a party, and the nonsuit does not operate as a bar to a subsequent suit between the same parties on the same cause of action. Payne v. Buena Vista Extract Co., 124 Va. 296, 313, 98 S.E. 34, 40 (1919). The only effect of a nonsuit is to put an end to the pending litigation without prejudice to either party. Alderman v. Chrysler Corp., 480 F. Supp. 600, 603 (E.D. Va. Nov. 2, 1979) (citing Thomas Gemmell, Inc. v. Svea Fire & Life Ins. Co., 166 Va. 95, 184 S.E. 457 (1936) (subsequent similar suit in state court); Popp v. Archbell, 203 F.2d 287 (4th Cir. 1953) (subsequent similar suit in federal court)).

Dr. Marsh argues that plaintiff's "clear intent" was to ask the general district court to enter a final order on the merits because Dr. Marsh subsequently provided the requested diet. However, plaintiff's intent is not clear on the face of state court motion that he sought a final order dismissing the case with prejudice. Plaintiff's motion to withdraw the action in the general district court was not most likely a motion to voluntarily dismiss with prejudice, as Dr. Marsh

---

[10] An "action" is defined as "all civil proceedings whether at law, in equity, or statutory in nature and whether in circuit courts or district courts." Va. Code § 8.01-2.

argues, because plaintiff had the right under Virginia law to nonsuit his action without prejudice. See Anderson, 477 U.S. at 248 (all reasonable inferences should be drawn in a light most favorable to the party opposing a summary judgment motion). Furthermore, the general district court does not give any indication that the matter was considered or adjudged on its merits or that the matter was concluded with prejudice. Therefore, res judicata can not bar this action because it is not established that a prior final judgment on the merits exists.

III.

For the foregoing reasons, I deny Dr. Marsh's motion to dismiss arguing improper service, failing to state a claim upon which relief may be granted, and res judicata.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and counsel of record for the defendants.

**ENTER**: This 25th day of March, 2010.

Senior United States District Judge