CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for RKs
DEC 14 2010
JULIA C. DUDLEY, CLERK
BY: H McDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GEORGE FREDERICK DELANEY, <br> Plaintiff, | ) Civil Action No. 7:08-cv-00465 <br> ) <br> ) |
| v. | ) **MEMORANDUM OPINION** <br> ) |
| JOHN MARSH, M.D., et al., <br> Defendants. | ) By: Hon. Jackson L. Kiser <br> ) Senior United States District Judge |

Plaintiff George Frederick Delaney, a Virginia inmate proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff named as defendants Daniel Braxton, Warden of the Augusta Correctional Center ("ACC"), and Fred Shilling, Director of Health Services ("correctional defendants"); Carolyn Maclam, head nurse; and Dr. John Marsh.[1] Plaintiff alleges that the defendants denied him necessary medical treatment while plaintiff was incarcerated at the ACC, in violation of the Eighth Amendment of the United States Constitution. I previously granted the correctional defendants' and Maclam's motions for summary judgment, terminated them as defendants,[2] and ordered Dr. Marsh to file a motion for summary judgment supported by affidavits. Dr. Marsh filed the motion, and plaintiff responded, making the matter ripe for disposition. After reviewing the record, I deny plaintiff's motions to amend and grant in part and

---

[1] Plaintiff subsequently amended his complaint to correct the defendant doctor's name from Robert Marsh, M.D. to John Marsh, M.D.

[2] Plaintiff appealed the order granting Maclam's motion for summary judgment. Plaintiff claimed he was entitled to default judgment because he allegedly did not receive a copy of Maclam's motion and brief. I denied his repeated motions for default judgment based on this argument. See Weller v. Dep't of Soc. Serv.s, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view . . . pro se [pleadings] does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed."). The Court of Appeals subsequently dismissed his appeal as premature. Presently pending before me is another motion by plaintiff for default judgment because he allegedly did not receive a copy of Maclam's brief. In accordance with the orders entered on January 6 and April 8, 2010, plaintiff's repeated motion for default judgment is denied.

deny in part defendant Marsh's motion for summary judgment.

I.

Plaintiff was incarcerated at the ACC from December 4, 2007, to May 15, 2008, and he alleges that during this time Dr. Marsh denied him a medically necessary diet ordered by the Medical College of Virginia Hospital ("MCV") in 2003 and approved by the Virginia Department of Corrections ("VDOC") on January 4, 2008. Dr. Marsh provided medical services to plaintiff from December 6, 2007, until May 1, 2008. (Marsh Aff. (Def.'s Br. Supp. Mot. Summ. J. (no. 129) Ex. 1) ¶ 4.) Dr. Marsh is a board certified family physician licensed to practice medicine in the Commonwealth of Virginia. (Id. ¶ 1.) Pursuant to the contract between the University of Virginia Health Services Foundation and the Commonwealth of Virginia, Dr. Marsh provided general and emergency medical services at this facility. Dr. Marsh ordered testing, monitoring, medications, and therapies like restricted diets. (Id. ¶ 3.)

A. Plaintiff's medical history.

In 1995, plaintiff had a history of ulcerative colitis. In 1997, he was "status post total colectomy with ileostomy." (Id. ¶ 6). In 1998, plaintiff had an "ileostomy take down and ileo-anal anastomosis and total colectomy following a small bowel obstruction." (Id.) In 2003, plaintiff had a temporary insertion of a rectal tube for treatment at the MCV of a small bowel obstruction. (Id.; Medical Record ("MR") (Def.'s Br. Supp. Mot. Summ. J. Ex. 3 Attch. 1) 1-6.) Upon his discharge from the MCV in 2003, plaintiff received the following diet instructions: "[d]iet restrictions to exclude beef, cheese, carrots, corn, red beans, turkey, potato skins, steamed vegetables, green peppers, and onions." (hereinafter referred to as the "2003 MCV Diet") (MR 6; Marsh Aff. ¶ 7; Pl.'s Resp. to Def.'s Br. Supp. Mot. Summ. J. (no. 134) 3.) The 2003 MCV

2

Diet instructions did not mention processed foods. (MR 5-6; Marsh Aff. ¶ 8; Pl.'s Resp. to Def.'s Br. Supp. Mot. Summ. J. 3).

The Virginia Beach General District Court entered an order in 2006, based on plaintiff's petition to that court, that required the Virginia Beach Jail to provide a medically necessary diet to plaintiff during his incarceration there. This diet included "[c]hicken, fish, tuna, rice, potatoes without skin, pasta, canned fruit, peaches, banana and health shakes. No beef, cheese, carrots, corn, red beans, turkey patties, potato skins, steamed vegetables, green peppers or onions." (MR 7; Marsh Aff. ¶ 9; Pl.'s Resp. to Def.'s Br. Supp. Mot. Summ. J. 4.) Despite these instructions, however, plaintiff was admitted to a Virginia Beach hospital in April 2007 for treatment of a small bowel obstruction. (MR 8-9; Marsh Aff. ¶ 10.) In August 2007, plaintiff entered Mecklenburg Correctional Center ("Mecklenburg"), a VDOC facility not within the jurisdiction of the Virginia Beach General District Court. (MR 10; Marsh Aff. ¶ 11; Pl.'s Resp. to Def.'s Br. Supp. Mot. Summ. J. 4.)

On December 4, 2007, plaintiff was referred from Mecklenburg to the MCV to determine whether he needed a special diet. The MCV physician wrote, "[p]atient must be on a true low reside diet.[3] Include nutrition shake." (MR 11; Marsh Aff. ¶ 12). Plaintiff was subsequently transferred to the ACC the next day, December 5, 2007.

B.   Plaintiff and Dr. Marsh at the ACC.

Dr. Marsh saw plaintiff for the first time on December 6, 2007. (Marsh Aff. ¶ 14).

---

[3] Residue is fiber and undigested food that remains in the intestines and contributes to stool. (Marsh Aff. ¶ 13.) A low residue diet is intended to reduce the size and number of stools. A low residue diet is similar to a low fiber diet, but in addition to limiting fiber, a low residue diet also limits dairy products and avoids foods such as tough or coarse meats with gristle, seeds and nuts, coconut, and peanut butter. (Id.)

Plaintiff disclosed the details of his medical history to Dr. Marsh. (Pl.'s Resp. to Def.'s Br. Supp. Mot. Summ. J. 2.) Dr. Marsh noted that plaintiff was "status post colectomy secondary to ulcerated colitis and had a history of intermittent obstruction." (Marsh Aff. ¶ 15.) Dr. Marsh wrote as an assessment, "[n]eeds special diet low residue." He then wrote, "[c]ontinue diet as noted low residue diet, [b]oost 1 can twice daily for 180 days, [n]eeds barium enema at MCV, [b]ottom bunk times 180." (MR 25; Marsh Aff. ¶ 15.) Finally, Dr. Marsh wrote, "give inmate an inmate copy of low residue diet noted in chart." (MR 26; Marsh Aff. ¶ 16). This diet ordered by Dr. Marsh, the diets recommended by the MCV in 2003 and 2007, and the diet ordered by the VABGDC in 2006, were all low-residue diets. (Marsh Aff. ¶ 17). However, Dr. Marsh denied plaintiff's request for a more stringent "no processed foods" diet. (Pl.'s Resp. to Def.'s Br. Supp. Mot. Summ. J. 6.)

Two weeks later on December 19, 2007, at 8:30 p.m., plaintiff complained of constipation and severe pain. The nursing staff paged Dr. Marsh an hour later, and Dr. Marsh instructed the nurse to observe plaintiff in the medical unit until he could see plaintiff the next morning. (MR 35; Marsh Aff. ¶ 18). Plaintiff reported to Dr. Marsh the next morning and stated that he had nausea and vomiting. Dr. Marsh found no evidence of bowel obstruction on examination, but he nevertheless sent plaintiff to a local hospital for abdominal X-rays. The results suggested a small bowel obstruction, and Dr. Marsh ordered plaintiff's transfer to the MCV where he was previously treated for a small bowel obstruction. (MR 36, 62; Marsh Aff. ¶ 19.)

The MCV discharged plaintiff on January 2, 2008, with the following diet instructions: "Due to his intestinal disease, patient may not have <u>processed foods</u>, spicy foods, raw vegetables,

4

oranges, apples, corn flakes, boiled eggs, cheese, beans, peanut butter, or any type of nuts."[4] (hereinafter "2008 MCV Diet") (MR 64; Marsh Aff. ¶ 20; Pl.'s Resp. to Def.'s Br. Supp. Mot. Summ. J. 8 (emphasis added).) This recommendation was the first time the anyone issued a recommendation to exclude processed foods from plaintiff's low-residue diet. (Marsh Aff. ¶ 21).

Dr. Marsh saw plaintiff twice the next day, January 3, 2008. During the first visit, Dr. Marsh noted that plaintiff was doing well and tolerating some food. His examination of plaintiff's abdomen was negative. Plaintiff remained in the infirmary to be observed. (MR 42-43; Marsh Aff. ¶ 22.) Plaintiff received a liquid diet after his discharge and before the approval of a new solid-food diet. (MR 46.)

Around 1:30 p.m. later that day, Dr. Marsh saw plaintiff the second time after a "self-reported vomiting incident." He noted that plaintiff still had chronic bowel pain status post small bowel obstruction but did not have nausea or vomiting. Dr. Marsh's examination of plaintiff's abdomen was negative for complications. (MR 44; Marsh Aff. ¶ 23.) Dr. Marsh also discussed the 2008 MCV diet restrictions with plaintiff and ordered the nurse to give plaintiff an inmate copy of the diet. (MR 44.) The nurse signed this order by writing "see below" and then "copy of VCU recommendations of no processed, spicy foods, raw vegetables, oranges, apples, corn flakes, boiled eggs, cheese, beans, peanut butter, or any type of nuts." (MR 44.) Dr. Marsh avers that he expected that the 2008 MCV Diet recommendations would be implemented.[5] (Marsh

---

[4] Cf. 2003 MCV Diet ("[d]iet restrictions to exclude beef, cheese, carrots, corn, red beans, turkey, potato skins, steamed vegetables, green peppers, and onions."); Va. Beach Gen. Dist. Ct. Order (diet included "[c]hicken, fish, tuna, rice, potatoes without skin, pasta, canned fruit, peaches, banana and health shakes" but excluded "beef, cheese, carrots, corn, red beans, turkey patties, potato skins, steamed vegetables, green peppers or onions.").

[5] However, plaintiff included a signed but unverified statement of Nurse Maclam that indicates Dr. Marsh omitted the no-processed foods exclusion from the Diet because it would be "almost impossible" to implement. (Am. Compl. 23.)

5

Aff. ¶ 24).

On January 4, 2008, Dr. Harvard Stephens, Chief Physician for the VDOC, approved the 2008 MCV Diet that recommended a low residue diet that excluded processed foods. (MR 45.) Plaintiff's diet was then submitted to the VDOC dietician, Linda Shear, MS, R.D., to determine how to implement the diet. (Sanders Aff. (Def's Br. Supp. Mot. Summ. J. Ex. 2) ¶ 3.) Dr. Marsh avers that he did not participate in or have any control over this process. (Marsh Aff. ¶ 25).

Dr. Marsh saw plaintiff again on January 10, 2008. Dr. Marsh noted that plaintiff was doing well and had no problem with an obstruction at that time. Dr. Marsh reviewed the diet restrictions with plaintiff and discharged him from the infirmary. (MR 48; Marsh Aff. ¶ 26.)

On January 14, 2008, Shear determined that processed meats would not be problematic for plaintiff, despite the 2008 MCV Diet's prohibition of processed foods. (Pl.'s Resp. to Def.'s Br. Supp. Mot. Summ. J. 10, Ex. 17.) On the same day, plaintiff filed an emergency grievance, complaining that he was served a turkey patty that allegedly consisted of processed meat. However, the VDOC staffer responded with the allegation that Dr. Marsh approved the use of some processed meat in plaintiff's diet. (Id. Ex. 10.) At approximately the same time, Nurse Maclam issued a memorandum to the food service staff that "Medical realizes the no process [sic] portion of [the 2008 MCV] recommended diet is almost impossible to continue, so Dr. Marsh has approved deletion of that criteria on this diet." (Id. Ex. 18.)

Dr. Marsh saw plaintiff the next day, January 15, 2008, when he reviewed plaintiff's history and re-examined him. Dr. Marsh diagnosed plaintiff with hemorrhoids and prescribed Anusol CH suppositories three times a day for 15 days and Anusol HC cream twice daily for 15 days. (MR 49; Marsh Aff. ¶ 27.) Plaintiff alleges that his hemorrhoids were caused by or

6

exacerbated by Dr. Marsh's alleged failure to comply with the 2008 MCV Diet's no processed food provision.

On January 22, 2008, plaintiff filed an informal grievance, stating that his internal condition felt so bad that he was scared to eat because his rectum was so swollen it hurt to defecate. (Pl.'s Resp. to Def.'s Br. Supp. Mot. Summ. J. 10.) Plaintiff subsequently became aware of Shear's recommendation, and he sent a letter to Dr. Marsh to inform him of Shear's erroneous recommendation and deviation from the 2008 MCV Diet.[6] Dr. Marsh then saw plaintiff on February 6, 2008, because plaintiff complained of abdominal pain resulting from a diet that included processed foods. (Id. 10.) During this meeting, plaintiff again requested Dr. Marsh to order a diet that prohibited processed foods, as directed by the MCV and approved by Dr. Stephens for the VDOC. Plaintiff avers that Dr. Marsh told plaintiff that he had authorized the ACC food service department to give plaintiff processed foods and that plaintiff should pick and choose what he could eat. (Id.) However, Dr. Marsh noted that plaintiff was "tolerating the special low residue diet" and that his weight had been generally stable. (MR 52.) Dr. Marsh ordered close monitoring for possible small bowel obstruction, weight checks twice a week, and continuation of the low-residue diet. (MR 53; Marsh Aff. ¶ 28). Unhappy with Dr. Marsh's decision to not reauthorize the 2008 MCV Diet and the processed foods he received, plaintiff subsequently began purchasing fish from the ACC commissary to avoid processed foods provided by the ACC food service department, allegedly under the direction of Dr. Marsh.

In March 2008, plaintiff filed an action in the Augusta County General District Court for

---

[6]Plaintiff alleges that Shear's erroneous recommendation was partly based on her mischaracterizing his medical condition as "chronic[-]ulcerative colitis." Plaintiff argues that he no longer had this condition because his colon was surgically removed. (Pl.'s Resp. to Def.'s Br. Supp. Mot. Summ. J. 8-9, Ex. 17, 19, 21.)

7

an injunction to compel Dr. Marsh to re-authorize the 2008 MCV Diet that excluded processed foods. Dr. Marsh received notice of the action and subsequently met with plaintiff on April 17, 2008. Dr. Marsh reviewed plaintiff's blood work that was ordered the prior week and reported normal results. (MR 56-57; Marsh Aff. ¶ 29.) Dr. Marsh noted that plaintiff was feeling better and had no recent flare-ups of abdominal pain. (MR 56-57; Marsh Aff. ¶ 29). His weight was 184 pounds, and he appeared well developed and well nourished. (MR 56-57; Marsh Aff. ¶ 29). His abdomen was soft and non-tender, and he had negative guarding and positive bowel sounds. (MR 56-57; Marsh Aff. ¶ 29.) Dr. Marsh diagnosed "colitis, stable." (MR 56-57; Marsh Aff. ¶ 29.) During this visit, Dr. Marsh modified plaintiff's implemented low-residue diet, noting that plaintiff was to have "no <u>processed foods</u>, no raw vegetables, no spicy foods, no peanut butter, no nuts, no apples, no oranges, and no corn products." (MR 56; Marsh Aff. ¶ 30 (emphasis added).) Dr. Marsh also noted no beef or pork per plaintiff's request. This same day, the nurse submitted this diet request to Linda Shear. (MR 56-57; Marsh Aff. ¶ 30.) Plaintiff was transferred from ACC less than a month later, on May 15, 2008. (MR 60; Marsh Aff. ¶ 32).[7]

II.

As a preliminary matter, plaintiff filed motions to amend his complaint and responses to join the University of Virginia Health Services Foundation, Inc. ("HSFI") as an additional defendant pursuant to a state-law breach of contract claim. Plaintiff alleges that HSFI is

---

[7] In his affidavit, Dr. Marsh states that he ordered on April 22, 2008, a gastrograph enema to evaluate for strictures of the ileocecal anastomosis and saw plaintiff on May 1, 2008, to discuss his enema. Plaintiff disputes these assertions. Plaintiff alleges that the medical record does not establish he received the enema between April 22 and May 1, 2008, but he does not state that he did not receive this procedure. (Pl.'s Resp. to Def.'s Br. Supp. Mot. Summ. J. (no. 134) 11.) Plaintiff also states he did not meet with Dr. Marsh on May 1 but met only a nurse to discuss a finger injury. (Pl.'s Resp. to Def.'s Br. Supp. Mot. Summ. J. (no. 134) 11.) Plaintiff states that no discussion about the enema occurred at this meeting. (Pl.'s Resp. to Def.'s Br. Supp. Mot. Summ. J. (no. 134) 11.)

8

responsible for supervising and directing Dr. Marsh's performance because HSFI contracted with the VDOC to provide medical treatment for inmates at ACC. (Mots. Am. (no. 131, 135) 1.) Plaintiff argues without any supporting evidence that he is a third-party beneficiary to the contract between the VDOC and HSFI. Plaintiff seeks $500,000 in damages from HSFI for its breach of contract to provide "cost effective, quality inmate health care" services.

Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading once as a matter of course within 21 days of serving the pleading or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." If a party seeks to amend its pleadings in all other cases, it may only do so with the opposing party's written consent or the court's leave.[8] A court should freely give leave when justice so requires absent some reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962) (citing Fed. R. Civ. P. 15(a)(2)). "Motions to amend are committed to the discretion of the trial court." Keller v. Prince George's Cnty., 923 F.2d 30, 33 (4th Cir. 1991).

However, a court must also consider the more specific joinder provisions of Rules 19(a) and 20(a) when a plaintiff files a motion to amend that seeks to join additional defendants. Hinson v. Norwest Financial S.C., Inc., 239 F.3d 611, 618 (4th Cir. 2001). The proposed additional defendants must have a right to relief asserted against them, "arising out of the same transaction, occurrence, or series of transactions or occurrences" and the claims must share some

---

[8] The defendant has neither consented nor objected to plaintiff's instant motion to amend.

9

"question of law or fact common to" all of the defendants. Fed. R. Civ. P. 20(a)(2).

Although plaintiff filed the instant action under § 1983 and the Eighth Amendment, plaintiff now proposes a state-law contract claim against a non-defendant more than two years after the events giving rise to his claims. I must deny plaintiff's motions to amend because plaintiff fails to "clearly and definitely" establish that he was anything but an incidental beneficiary of the ACC's contract to provide medical services so the ACC and the Commonwealth of Virginia were in compliance with the Eighth Amendment and not exposed to legal or equitable claims. See Copenhaver v. Rogers, 384 S.E.2d 593, 596 (Va. 1989) (stating plaintiff must prove that the parties to the agreement clearly and definitely intended to confer a benefit upon him). Moreover, plaintiff fails to describe, beyond his mere conclusion, how HSFI breached its contract when plaintiff repeatedly received various medical services from HSFI staff. Furthermore, plaintiff is essentially trying engraft a third-party beneficiary theory to what is at its core an Eighth Amendment deliberate indifference claim in order to evade the vicarious liability bar in § 1983 actions. Under § 1983, a private corporation cannot be held vicariously liable for the actions of its employees absent a showing of an impermissible corporate policy. Iskander v. Village of Forest Park, 690 F.2d 126, 130 (7th Cir. 1982); Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982). Plaintiff's only allegation against HSFI is that it employed Dr. Marsh during the alleged constitutional violations. In the absence of an impermissible corporate policy, plaintiff cannot evade the limits of a constitutional claim by recasting it as a third party beneficiary claim. Thus, plaintiff presently fails to clearly and definitely establish he was an intended beneficiary and to state a claim against HSFI, and I deny his motions to amend.

10

III.

A.  Standard of Review.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[9] Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky.

---

[9] The parties received reasonable and explicit notice that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk issued a timely Roseboro notice. See Fed. R. Civ. P. 12(d); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

B.  Dr. Marsh is not Entitled to Qualified Immunity.

Dr. Marsh argues that he is entitled to qualified immunity because plaintiff fails to show that his conduct violated the plaintiff's constitutional right. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to shield public officers from liability where "a change in the law or. . . enduring legal uncertainty. . . makes it difficult for the officer to assess the lawfulness of the act in question before he does it." Ralston v. McGovern,

167 F.3d 1160, 1162 (7th Cir. 1999). Whether a defendant can claim qualified immunity is a pure question of law and is properly determined pretrial. Saucier v. Katz, 533 U.S. 194, 200-01 (2001), modified by Pearson v. Callahan, 129 S. Ct. 808 (Jan. 21, 2009) (permitting lower courts the discretion to determine which qualified immunity prong to analyze first).

Qualified immunity is an immunity from suit rather than a mere defense to liability. A plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993). However, a defendant must demonstrate that the right was not clearly established at the time of the incident to receive qualified immunity. Henry v. Purnell, 501 F.3d 374, 378 (4th Cir. 2007). Accordingly, in order to avoid summary judgment on the basis of qualified immunity, plaintiff must produce sufficient admissible evidence from which a fact-finder could conclude that Dr. Marsh exhibited deliberate indifference to a serious medical need and that the violated constitutional right was clearly established at the time of the violation.

1.      Plaintiff states a claim upon which relief may be granted.

A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need in order to state a claim under the Eighth Amendment for inadequate medical assistance. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee, 797 F.2d at 181-83. In order to show deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. Farmer v.

13

Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). It is insufficient that a reasonable officer would have found the risk to be obvious. Rich v. Bruce, 129 F.3d 336, 339-40 (4th Cir. 1997). Rather, the risk of injury must be "so obvious that the factfinder could conclude that the [officer] did know of it because he could not have failed to know of it." Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995).

Furthermore, alleged delays in providing adequate care also do not rise to the level of deliberate indifference where the delay does not cause further injury. Kane v. Hargis, 987 F.2d 1005, 1009 (4th Cir. 1993). Moreover, claims of medical malpractice and negligent diagnosis are not cognizable in a § 1983 proceeding. Id. See Sosebee, 797 F.2d at 179; Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence, but not a claim under the Eighth Amendment). A prisoner's disagreement with medical personnel over the course of his treatment does not state a § 1983 claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Instead, the treatment or lack thereof "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness[;] . . . mere negligence or malpractice does not violate the Eighth Amendment." Miltier, 896 F.2d at 851.

Based on the present record viewed in the light more favorable to the plaintiff, plaintiff's

14

lengthy medical complications from his digestive system have the potential to cause extreme pain requiring specialized medical treatment and frequent observation. Plaintiff's problematic digestive system has required extensive emergency medical treatment for the past fifteen years and a special diet since 2003. Therefore, plaintiff describes a serious medical need.

The present record also establishes that Dr. Marsh subjectively recognized plaintiff's serious medical need for a special diet. Dr. Marsh knew of plaintiff's prior medical history, either by reviewing plaintiff's records or discussing the matters with plaintiff. Plaintiff's medical records clearly disclosed plaintiff's need for a special diet, including the 2008 MCV Diet recommendation. Furthermore, plaintiff's medical record evidenced two prior bowel obstructions in 2003 and 2007 that were caused by the foods he ate and that were served by correctional facilities.

Thus, whether Dr. Marsh exhibited deliberate indifference depends on the type of diet at issue and when it was provided to plaintiff. Plaintiff alleges that Dr. Marsh was deliberately indifferent when: a) Dr. Marsh failed to provide the 2003 MCV Diet; b) Dr. Marsh refused to order plaintiff a low-residue diet that excluded processed foods prior to the 2008 MCV Diet despite plaintiff's requests; and c) Dr. Marsh delayed plaintiff's access to the 2008 MCV Diet, which excluded processed foods.

The record establishes that plaintiff needed a low-residue diet beginning in 2003. The low-residue diet was ordered on four occasions: in 2003 by the MCV after his first bowel obstruction; in 2006 by the Virginia Beach General District Court; in 2007 by the MCV before plaintiff's arrival at the ACC; and in January 2008 by the MCV after his most recent bowel obstruction. However, the first medical recommendation about the exclusion of processed foods from plaintiff's diet occurred only in January 2008 with the 2008 MCV Diet.

a. Providing the 2003 MCV Diet.

The record establishes that Dr. Marsh did not exhibit deliberate indifference to plaintiff's need for the low-residue diet required by the 2003 MCV Diet. This Diet, as recommended by the MCV and approved by the VDOC, did not determine that avoiding processed foods was medically necessary. Dr. Marsh ordered the ACC food service department to serve plaintiff foods that complied with the 2003 MCV Diet, which did not prohibit processed foods, and further ordered that plaintiff receive an additional nutrition shake. (MR 25; Marsh Aff. ¶ 15). Nothing in the present record indicates that Dr. Marsh did not comply with constitutional standards in facilitating the provision of the 2003 MCV Diet.

b. Refusal to exclude processed foods before the 2008 MCV Diet.

Plaintiff fails to establish that Dr. Marsh's refusal to exclude processed foods from plaintiff's diet constituted deliberate indifference. Nothing in plaintiff's medical file specifically informed Dr. Marsh that plaintiff medically needed a heightened "no processed foods" low-residue diet. Instead, the record establishes a history of plaintiff needing a low-residue diet, which plaintiff received at the ACC via Dr. Marsh's December 2007 order and was the same diet the MCV recommended and the VDOC approved. The record shows that Dr. Marsh was keenly aware of plaintiff's medical history and his need for a special diet. Based on the medical discharge instructions, the MCV specialists did not indicate that processed foods needed to be excluded from plaintiff's diet. Dr. Marsh continued to monitor plaintiff's symptoms throughout 2007 and did not disregard a "risk of harm of which he was aware."

Plaintiff is essentially dissatisfied that Dr. Marsh did not grant his repeated, unsupported requests for a medical order to exclude processed foods from his low-residue diet. However, the law is clear that a prisoner's disagreement with a doctor about the course of treatment does not state

a § 1983 claim. Plaintiff's argument that Dr. Marsh should have drawn an inference that processed foods should also have been excluded from his diet does not present an Eighth Amendment claim. See Johnson, 145 F.3d at 168 (holding that doctors are only deliberately indifferent if they "subjectively 'know[] of' the serious medical condition itself" and consciously disregard a substantial risk of serious harm implied by that condition).

   c. Delayed access to the 2008 MCV Diet, which excluded processed foods.

Plaintiff alleges that Dr. Marsh was deliberately indifferent to his dietary needs between January 14 and April 17, 2008, by delaying his access to the 2008 MCV Diet, which excluded processed foods. A significant delay in the treatment of a serious medical condition may, in the proper circumstances, indicate an Eighth Amendment violation. See Estelle, 429 U.S. at 104-05 (holding that deliberate indifference may constitute "the unnecessary and wanton infliction of pain" by "intentionally denying or delaying access to medical care"). An Eighth Amendment violation occurs, however, if the delay results in some harm to the patient. See Estelle, 429 U.S. at 106 ("[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.") (emphasis added). See also Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) (same); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (same). But see Blackmore v. Kalamazoo County, 390 F.3d 890, 899-900 (6th Cir. 2004) ("Plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time."). Compare Price v. Carey, No. 91-6643, 1992 U.S. App.

LEXIS 2671, 1992 WL 34208, at *4 (4th Cir. Feb. 26, 1992) (unpublished) (an eight-month delay in providing elective hernia surgery was insufficient to constitute an Eighth Amendment violation, because the prisoner "did not present any information" to his physician during the intervening period "to indicate that his situation was an emergency mandating immediate treatment"), with Garrett v. Elko, No. 95-7939, 1997 U.S. App. LEXIS 21271, 1997 WL 457667, at *1 (4th Cir. Aug. 12, 1997) (unpublished) (recognizing an Eighth Amendment claim where the prisoner's hernia surgery was delayed for four years despite continual "complaints of intense pain, anxiety, and limited mobility"). The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain. Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). See also Monmouth Cnty. Corr. v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987) (holding that deliberate indifference can be shown when medical treatment is delayed for non-medical reasons).

Viewing the record in a light more favorable to plaintiff, the record reflects that the MCV discharged plaintiff on January 2, 2008, with the specific provision that plaintiff should not be served processed foods. (MR 64.) Dr. Marsh was aware of this provision no later than the next day when he reviewed the new diet restrictions with plaintiff. (MR 44.) Two days after his discharge from the MCV, the VDOC approved the diet to exclude processed foods. (MR 45.)

Plaintiff filed an emergency grievance on January 14, 2008, complaining that he was served a turkey patty that allegedly consisted of processed meats. At least two VDOC staffers signed reports that indicate Dr. Marsh authorized staff to provide plaintiff processed meats despite the 2008 MCV Diet, possibly because of a non-medical reason. Plaintiff notified Dr. Marsh by his letter dated January 27, 2010, of Shear's erroneous recommendation and deviation from the 2008 MCV Diet and requested a diet that conformed to the 2008 MCV Diet.

Dr. Marsh then saw plaintiff on February 6, 2008, because plaintiff complained of abdominal pain resulting from a diet that included processed foods. (Pl.'s Resp. to Def.'s Br. Supp. Mot. Summ. J. 10.) Plaintiff described the pain as unbearable and that he was scared to eat because his rectum was so swollen and tender. Plaintiff again requested Dr. Marsh to order a diet that prohibited processed foods, as directed by the MCV and approved by the VDOC's Chief Physician. Dr. Marsh again allegedly refused to order a no processed foods diet in accordance with the 2008 MCV Diet. It was only after plaintiff filed suit in state court that Dr. Marsh modified his "special low-residue diet" to follow the 2008 MCV Diet to exclude processed foods.

Evidence of Dr. Marsh's deliberate indifference is sufficient to raise a reasonable inference that he recognized that his response was inappropriate in light of plaintiff's serious medical need for the 2008 MCV Diet. See Parrish, 372 F.3d at 303 (stating a plaintiff can make a prima facie case of deliberate indifference by showing that a substantial risk of serious harm was long-standing, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it). Admittedly, Dr. Marsh repeatedly examined plaintiff for his condition, but the evidence shows an explicit medical recommendation via the 2008 MCV Diet, the nurse's and other staff's indications that the 2008 MCV Diet was not implemented for non-medical reasons, and allegations of intense pain and resulting intestinal blockage. Thus, it is certainly questionable whether the line between either acceptable treatment or treatment that may be intolerable to fundamental fairness in violation of the Eighth Amendment was crossed.

19

Summary judgment based upon qualified immunity is inappropriate "where what actually happened . . . need[s] to be resolved by the trier of fact in order to reach a decision on the applicability of qualified immunity." Lowery v. Stovall, 92 F.3d 219, 222 (4th Cir. 1996) (quoting Rainey v. Conerly, 973 F.2d 321, 324 (4th Cir. 1992)). If the trier of fact was to find that the defendant acted with deliberate indifference to the plaintiff's serious medical needs, then it could not be said that it was "objectively reasonable" for the defendant to believe that his actions did not violate the plaintiff's constitutional rights. After viewing the evidence in the light more favorable to the plaintiff, I conclude that sufficient evidence exists to raise a genuine issue of material fact as to whether Dr. Marsh was deliberately indifferent to plaintiff's serious medical need and summary judgment must be denied about the delay in receiving the 2008 MCV Diet. See Johnson v. Jones, 515 U.S. 304, 313, 319-20 (1995) (holding that a district court's denial of summary judgment because of a genuine issue of material fact is not a "final decision").

IV.

For the foregoing reasons, I deny plaintiff's motion to vacate and motions to amend, and I grant in part and deny in part defendant's motion for summary judgment. Summary judgment is granted as to claims regarding the provision of the 2003 MCV Diet and refusal to exclude processed foods before the 2008 MCV Diet, and it is denied as to the delay in access to the 2008 MCV Diet. Accordingly, the Clerk shall set this matter for trial.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and counsel of record for the defendants.

**ENTER:** This 14th day of December, 2010.

_Jackson L. Kiser_
Senior United States District Judge